**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
E-mail: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PARADISE MORGAN, Individually and as the
representative of a class of similarly situated persons,

                                               Case No. 25-cv-1333

                          Plaintiff,

                 - against -

TOAST, INC. and GOOD SUGAR LLC,

                         Defendants.
---------------------------------------------------------X

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff, Paradise Morgan ("Plaintiff" or "Morgan"), brings this action on behalf of herself and all other persons similarly situated against Toast, Inc. ("Toast") and Good Sugar LLC ("Good Sugar") (hereinafter jointly referred to as "Defendants"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Defendants for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendants are denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Defendants provide to their non-disabled customers through www.order.toasttab.com/online/goodsugar (hereinafter "order.toasttab.com/online/goodsugar" or "the Website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Order.toasttab.com/online/goodsugar provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs. Yet, order.toasttab.com/online/goodsugar contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Defendants exclude the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website

means that blind people are excluded from experiencing transacting with Defendants' website and from purchasing goods or services from Defendants' website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendants has chosen to rely on an exclusively visual interface. Defendants' sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on order.toasttab.com/online/goodsugar.

8. By failing to make the website accessible to blind persons, Defendants are violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of the 18 Greens, the Acai, and the Crispy Cauliflower Poppers for delivery to her home on order.toasttab.com/online/goodsugar. However, unless Defendants remedy the numerous access barriers on the Website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on order.toasttab.com/online/goodsugar.

3

11. Because Defendants' website, order.toasttab.com/online/goodsugar, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendants' policies, practices, and procedures so that Defendants' website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendants conduct and continue to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendants are registered to do business in New York State and have been conducting business in New York State, including in this District. Defendants purposefully target and otherwise solicits business from New York State residents through the website. Because of

4

this targeting, it is not unusual for Defendants to conduct business with New York State residents. Defendants also have been and are committing the acts alleged herein in this District and have been and are violating the rights of consumers in this District and has been and are causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods.*, 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods.*, 280 F.Supp.3d at 293. Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the Defendants "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

## PARTIES

16. Plaintiff, is and has been at all relevant times a resident of New York County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the New York State Human Rights Law and the New York City Human Rights Law.

5

Plaintiff, Paradise Morgan, cannot use a computer without the assistance of screen reader software. Plaintiff, Paradise Morgan, has been denied the full enjoyment of the facilities, goods and services of order.toasttab.com/online/goodsugar, as a result of accessibility barriers on order.toasttab.com/online/goodsugar.

18. Defendant, Toast, Inc. is a Delaware Foreign business corporation doing business in New York with a principal place of business located at 333 Summer Street, Boston, MA 02210. Upon information and belief, Toast is a software company that helps food establishments manage their online ordering.

19. Defendant, Good Sugar LLC is a Delaware foreign limited liability company doing business in New York with a principal place of business located at 1186 Third Avenue, New York, NY 10021. Good Sugar, in collaboration with Toast, enable (sighted) visitors to the Website to purchase Good Sugar's products for delivery to their home.

20. Defendants provide to the public a website known as order.toasttab.com/online/goodsugar which provides consumers with access to an array of goods and services, including, the ability to view the wide range of wellness-oriented, plant-based food products offered by Good Sugar that can be purchased with the click of a mouse through Toast's portal, among other features. Consumers across the United States use the Website to purchase Good Sugar products for delivery to their home. Defendants maintain a brick-and-mortar retail store location at 1186 Third Avenue, New York, NY 10021 where visitors can browse for products and make purchases. Defendants' website serves as a nexus to the physical store location. Defendants' website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017) and *Romero v. 88 Acres Foods, Inc.*, 20-cv-9215 (KMW), 2022 U.S. Dist. LEXIS 9040, at *7 (S.D.N.Y. Jan. 18, 2022).

## NATURE OF THE CASE

21. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

22. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen.  Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet.  Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

23. For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

24. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them.  Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

25. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons.  These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.  Many Courts have also established WCAG 2.1 as the standard guideline for accessibility.  The federal government has also promulgated website accessibility standards under

Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers.

## **FACTUAL ALLEGATIONS**

26. Defendants control and operate order.toasttab.com/online/goodsugar. in New York State and throughout the United States.

27. Order.toasttab.com/online/goodsugar is a commercial website that offers products and services for online sale. The online store allows the user to browse the wide range of wellness-oriented, plant-based food products offered by Good Sugar which offered for sale, make purchases, and perform a variety of other functions.

28. Among the features offered by order.toasttab.com/online/goodsugar are the following:

(a) Consumers may use the website to connect with Good Sugar on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase a wide range of wellness-oriented, plant-based food products offered by Good Sugar for delivery to their doorstep; and

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, learning about ingredients, and learning about promotions.

8

29. This case arises out of Defendants' policy and practice of denying the blind access to the goods and services offered by order.toasttab.com/online/goodsugar. Due to Defendants' failure and refusal to remove access barriers to order.toasttab.com/online/goodsugar, blind individuals have been and are being denied equal access to Good Sugar products, as well as to the numerous goods, services and benefits offered to the public through order.toasttab.com/online/goodsugar.

30. Defendants deny the blind access to goods, services and information made available through order.toasttab.com/online/goodsugar by preventing them from freely navigating order.toasttab.com/online/goodsugar.

31. The Website contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

32. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on order.toasttab.com/online/goodsugar that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind

order.toasttab.com/online/goodsugar customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

33. Order.toasttab.com/online/goodsugar also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as order.toasttab.com/online/goodsugar, these forms include fields to locate products, fields to select quantity, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendants' merchandise, nor can they enter their personal identification and financial information with confidence and security.

34. Specifically, when Plaintiff attempted to make a purchase using JAWS, she encountered the following problems:

- Plaintiff was unable to access the menu category buttons at the top of the page as they are NOT labeled and do NOT function as advised. When Plaintiff navigated to these buttons, her screen reader announced, "list box has pop-up, to move to an item press the arrow keys period." Plaintiff did NOT know the purpose of this, and when she pressed the arrow keys, NOTHING happened. Pressing the tab key expands the list, but then the arrow keys CANNOT be used to move focus through the list. This is a critical error.
- Plaintiff was unable to determine if a product was out-of-stock. When a product is out-of-stock, sighted visitors can see a red 'out of stock' notice displayed below the item description. However, this is NOT announced when focus moves to the item.
- Plaintiff was unable to change the quantity of any product. While the Plus (+) and Minus (-) buttons are properly announced, there was not verbal notification given when attempting to change the quantity of any product. Therefore, Plaintiff had no idea if the quantity was changed.
- Plaintiff was unable to add a product to the shopping cart if it has a required customization. When Plaintiff selected the 'Add to Cart' button without making the required selection (i.e. toppings), the pop-up visibly scrolls up to reveal the incomplete section to sighted users. However, NOTHING is announced by the screen reader to alert blind users of the error.

- Plaintiff was unable to complete the Checkout process. The 'Debit or Credit Card' edit fields on the checkout page are NOT labeled. They are announced as "edit blank type a text period." Plaintiff did NOT know the purpose or destination of these fields. Additionally, if a user navigates past these fields without accurately completing them, a red error icon appears in the field, but NOTHING is announced by the screen reader to alert blind users of the error.

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

35. Furthermore, order.toasttab.com/online/goodsugar lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on order.toasttab.com/online/goodsugar's menu pages do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase.

36. Order.toasttab.com/online/goodsugar also lacks accessible forms. Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the shopping cart. As a result, blind customers are denied access to the shopping cart and to the ability to check out. Consequently, blind customers are unsuccessful in adding products into their shopping carts and are essentially prevented from purchasing items on order.toasttab.com/online/goodsugar.

37. Moreover, the lack of navigation links on the Website makes attempting to navigate through order.toasttab.com/online/goodsugar even more time consuming and confusing for Plaintiff and blind consumers.

38. order.toasttab.com/online/goodsugar requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page

using only the keyboard.  Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another.  Thus, order.toasttab.com/online/goodsugar's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on order.toasttab.com/online/goodsugar.

39. Due to order.toasttab.com/online/goodsugar's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers.  Some blind customers may require a driver to get to the stores or require assistance in navigating the stores.  By contrast, if order.toasttab.com/online/goodsugar was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do.  According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website.  Plaintiff must tab through every navigation bar option and footer on the website in an attempt to reach the desired service.  Thus, order.toasttab.com/online/goodsugar's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on order.toasttab.com/online/goodsugar.

40. order.toasttab.com/online/goodsugar thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use order.toasttab.com/online/goodsugar and who would otherwise be able to fully and equally enjoy the benefits and services of order.toasttab.com/online/goodsugar in New York State and throughout the United States.

41. Plaintiff, Paradise Morgan, has made numerous attempts to complete a

purchase on order.toasttab.com/online/goodsugar, most recently on January 11, 2025; January 15, 2025; and January 22, 2025, but was unable to do so independently because of the many access barriers on Defendants' website. These access barriers have caused order.toasttab.com/online/goodsugar to be inaccessible to, and not independently usable by, blind and visually-impaired persons.  Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of the 18 Greens, the Acai, and the Crispy Cauliflower Poppers for delivery to her home. Moreover, if Defendants removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about new and additional wellness-oriented, plant-based foods for delivery to her doorstep. Plaintiff places a high priority on her health, and one of the key ways she does so is by eating as healthy as she can. Defendant has a physical retail store located at 1186 Third Avenue, New York, NY. Plaintiff had the opportunity to go to the store in early January 2025 to try some of their products. Plaintiff really enjoyed the products, especially the smoothies, juices, salads, lattes and clean-ingredient bakery items. Plaintiff really liked that Good Sugar's products are wellness-oriented and plant-based and are free from refined sugar and white flour. She also liked that Good Sugar emphasizes bold and unique flavors, avoids harmful additives and toxins, and maintains a high standard for ingredients. Thereafter, Plaintiff attempted to purchase Good Sugar's products online so that they can be delivered to his home. Unfortunately, the Website is not accessible, as outlined above, and Plaintiff was unable to order any products for delivery to her home. If Plaintiff was not deterred from returning to the website, she will be able to visit the website and purchase additional wellness-oriented, plant-based foods in the future. Plaintiff has bought similar items from other (accessible) online vendors in the past. However, since Good Sugar's products and selection are 100% plant-based, organic, healthy, and come in many flavors, Plaintiff would like to return to the website to make additional purchases once the

website becomes accessible. Plaintiff would like to try the different flavors of the Superfood Smoothies, the Smoothie Bowls, the signature foods, salads, chia, oatmeal, and parfaits, the soups, and of course, the many bakery items which are offered for sale. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortal locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc.*, 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during January and February 2025 without success and will definitely make purchases of additional products for delivery to her home, including the new products that are regularly added to the website, amongst many other products which are sold on the website and which currently cannot be purchased by blind persons.

42. As described above, Plaintiff has actual knowledge of the fact that Defendants' website, order.toasttab.com/online/goodsugar, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

43. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of order.toasttab.com/online/goodsugar.

14

44. Defendants engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

45. Defendants utilize standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

46. Because of Defendants' denial of full and equal access to, and enjoyment of, the goods, benefits and services of order.toasttab.com/online/goodsugar, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

47. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access order.toasttab.com/online/goodsugar and as a result have been denied access to the enjoyment of goods and services offered by order.toasttab.com/online/goodsugar, during the relevant statutory period."

48. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access order.toasttab.com/online/goodsugar and as a result

have been denied access to the enjoyment of goods and services offered by

order.toasttab.com/online/goodsugar, during the relevant statutory period."

49. There are hundreds of thousands of visually-impaired persons in New York

State.  There are approximately 8.1 million people in the United States who are visually-

impaired. *Id*.  Thus, the persons in the class are so numerous that joinder of all such persons is

impractical and the disposition of their claims in a class action is a benefit to the parties and to

the Court.

50. This case arises out of Defendants' policy and practice of maintaining an

inaccessible website denying blind persons access to the goods and services of

order.toasttab.com/online/goodsugar.  Due to Defendants' policy and practice of failing to

remove access barriers, blind persons have been and are being denied full and equal access to

independently browse, select and shop on order.toasttab.com/online/goodsugar.

51. There are common questions of law and fact common to the class, including

without limitation, the following:

(a) Whether order.toasttab.com/online/goodsugar is a "public accommodation"

under the ADA;

(b) Whether order.toasttab.com/online/goodsugar is a "place or provider of public

accommodation" under the laws of New York;

(c) Whether Defendants, through its website,

order.toasttab.com/online/goodsugar, denies the full and equal enjoyment of its goods, services,

facilities, privileges, advantages, or accommodations to people with visual disabilities in

violation of the ADA; and

(d) Whether Defendants, through the website, deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of New York.

52. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Defendants have violated the ADA, and/or the laws of New York by failing to update or remove access barriers on their website, order.toasttab.com/online/goodsugar, so it can be independently accessible to the class of people who are legally blind.

53. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

54. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

56. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

### FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

57. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 of this Complaint as though set forth at length herein.

58. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability."  42 U.S.C. § 12181(b)(2)(D)(I).

59. order.toasttab.com/online/goodsugar is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

60. Defendants are subject to Title III of the ADA because they own and operate order.toasttab.com/online/goodsugar.

61. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

62. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful

discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

63. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

64. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

65. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

66. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder.  Patrons of Defendants who are blind have been denied full and equal access to order.toasttab.com/online/goodsugar, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

67. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

68. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of order.toasttab.com/online/goodsugar in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

69. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

70. The actions of Defendants were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

71. Plaintiff is also entitled to reasonable attorneys' fees and costs.

72. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq*.))

73. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 72 of this Complaint as though set forth at length herein.

74. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

75. order.toasttab.com/online/goodsugar is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

76. Defendants are subject to the New York Human Rights Law because they own and operate order.toasttab.com/online/goodsugar. Defendants are a person within the meaning of N.Y. Exec. Law. § 292(1).

77. Defendants are violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to order.toasttab.com/online/goodsugar, causing order.toasttab.com/online/goodsugar to be completely inaccessible to the blind. This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendants make available to the non-disabled public.

78. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

79. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

80. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

81. Defendants' actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendants has:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

82. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

22

83. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of order.toasttab.com/online/goodsugar under N.Y. Exec. Law § 296(2) *et seq.* and/or its implementing regulations.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

84. The actions of Defendants were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

85. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

86. Plaintiff is also entitled to reasonable attorneys' fees and costs.

87. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### **THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq.*))

88. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 87 of this Complaint as though set forth at length herein.

89. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

90. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the

conditions and limitations established by law and applicable alike to all persons.  No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . .”

91. N.Y. Civil Rights Law § 40-c(2) provides that “no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision.”

92. order.toasttab.com/online/goodsugar is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

93. Defendants are subject to New York Civil Rights Law because they own and operate order.toasttab.com/online/goodsugar.  Defendants are a person within the meaning of N.Y. Civil Law § 40-c(2).

94. Defendants are violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to order.toasttab.com/online/goodsugar, causing order.toasttab.com/online/goodsugar to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendants make available to the non-disabled public.

95. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither

24

fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

96. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

97. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the Defendants shall reside . . ."

98. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

99. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

100. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

## FOURTH CAUSE OF ACTION
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

101. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 100 of this Complaint as though set forth at length herein.

102. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

103. Order.toasttab.com/online/goodsugar is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

104. Defendants are subject to City Law because they own and operate order.toasttab.com/online/goodsugar.  Defendants are a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

105. Defendants are violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to order.toasttab.com/online/goodsugar, causing order.toasttab.com/online/goodsugar to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public.

106. Defendants' actions also violate N.Y.C. Admin. Code § 8-107(17), which states that "unlawful discriminatory practice . . .  is established  . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

107. By failing to operate a website that is readily accessible and usable to individuals because of their disability, when viewed in its entirety, Defendants have

26

demonstrated a policy, practice, or procedure that has refused, withheld from, or denied Plaintiff, who qualifies as a member of a protected group under the provisions of the NYCHRL, any of the accommodations, advantages, facilities, or privileges of the Website.

108. The violations are particularly serious given the NYCHRL's "uniquely remedial" purpose, which provides that each section must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights law, including those laws with the provisions comparably-worded to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130.

109. Accordingly, Defendants' conduct is subject to a much stricter standard than under state or federal law, and its ability under these provisions must be determined separately and independently from its liability under the disability provisions of either state or federal law.

110. As a direct and proximate result of Defendants' violation of the NYCHRL, Plaintiff has been injured as set forth herein.

111. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of order.toasttab.com/online/goodsugar under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

112. The actions of Defendants were and are in violation of City law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

113. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

114. Plaintiff is also entitled to reasonable attorneys' fees and costs.

115. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
(Declaratory Relief)

116. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 115 of this Complaint as though set forth at length herein.

117. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny, that order.toasttab.com/online/goodsugar contains access barriers denying blind customers the full and equal access to the goods, services and facilities of order.toasttab.com/online/goodsugar, which Defendants own, operate and/or control, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

118. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a)   A preliminary and permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b)  A preliminary and permanent injunction requiring Defendants to take all the steps necessary to make the website, order.toasttab.com/online/goodsugar, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that order.toasttab.com/online/goodsugar is readily accessible to and usable by blind individuals;

c)  A declaration that Defendants own, maintain and/or operate the website, order.toasttab.com/online/goodsugar, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d)  An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e)  An order directing Defendants to continually update and maintain the website to ensure that it remains fully accessible to and usable by the visually-impaired;

f)  Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g)  Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h)  For pre- and post-judgment interest to the extent permitted by law; and

i)  For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
        February 14, 2025

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

29

By:<u>*/s/Dan Shaked*_____</u>
    Dan Shaked, Esq.
    14 Harwood Court, Suite 415
    Scarsdale, NY 10583
    Tel. (917) 373-9128
    e-mail: <u>ShakedLawGroup@Gmail.com</u>